Each side has 15 minutes. So we're ready and so counsel for the appellant may begin by stating your appearance and advising me of any amount you want to reserve for rebuttal. Thank you your honor and good morning. May it please the court. My name is Dan McGuire and I'm here to represent Unum Life. I'd like to reserve three minutes for rebuttal. All right that's aspirational but we'll hopefully it'll happen so go ahead. Well this issue in this case is whether Dr. Connor was eligible for the Unum coverage at issue. There are two eligibility requirements. The first is that should be a full-time employee, a term that's not defined in the policy. And the second is that should be an active employment which is defined in the policy as working at least 30 hours a week. The district court found coverage attached because Dr. Connor was working at least 30 hours a week. Before this panel are three charges of error. First the district court erred by eliminating the full-time employee requirement for eligibility. Instead conflating full-time eligibility with the active employment definition. As a contract interpretation issue that is subject to de novo review by the panel. Second the district court erred. So on that issue your argument is that working 30 hours a week does not constitute full employment and what does in your view then? If the employer requires further hours or if the occupation requires further hours then although the amount of hours your honor might be relevant it's not determinative. And what is determinative in your view? The employer's view and the occupational requirements. Well that sounds pretty vague that doesn't help me. Your honor the point is that not all occupations are the same. So if in the examples normally think in normal usage people think of full-time in terms of number of hours and so you have a clause that says all full-time employees in active employment in the United States are eligible and then active employment means and then it goes on and has the 30-hour benchmark. It is the natural reading of those two phrases to think that that's what it means to be in full employment. I respectfully disagree your honor and here's why. So in we must give the words in the policy a meaning. There's a reason they're in there we have to consider that. If the term is not defined then we look to the dictionary definition. I've cited two dictionary definitions one from Blacks the other from Merriam-Webster under both. Okay but so I guess what I'm struggling with just right here if I want to be a cross-examiner here is Judge Collins has just recited how the 30 hours there's a reasonable way to get there. When you were asked what's full-time employment is you said well it depends and you didn't have a number. So and it's your contract and if there's any ambiguity you don't win on that. So words that lead to that you can't give me a number. So how how do we get to your number when it's your contract? Because your honor there is no number. That's the point of our argument is that active employment is defined by a number but full-time employment cannot be. Then the reason counsel if you can't give us a number how do we know that she's not a full-time employee? There are a number of reasons why your honor. One is her own statements. That's our strongest evidence that she's not a full-time employee. That's factual. That's a factual basis. I thought you were talking about the law. You told us this was DeNovo review. So I'm trying to figure out DeNovo how do we know that she's not a full-time employee as a matter of law? We followed the dictionary definitions which I've cited including Blacks and Merriam-Webster. And what did Blacks say? How many hours? Blacks says full-time employment means one hired to work at least the number of hours in a work week as defined by the employer or statute usually 35 to 40 hours. Does the and does the employer does the employer have a have a number here that you can give us? For each occupation it's different. That's why I counsel you keep telling me that this is that I mean you can go to the facts if you want to go to the facts here. But you told us this was DeNovo review. So you got it you got to be able to give me a number to tell me why this is not full-time employment. Your Honor, the point of my argument is I can't give you a number because that term cannot be defined with reference solely to a number. If you have a physician, a judge, a lawyer who works 60 hours a week then 60 hours is full-time for them. If you have a clergy member, a yoga instructor, or a physical therapist who works 20 that it's 20. So then an associate at a law firm who has a light week and and works only 45 hours a week is suddenly part-time. I don't think people use the words in that way. That's not normal usage. No, Your Honor. I understand your point but my point is that that associate who's working 45 hours in a slow week is not going to be working in a slow week for forever and the dictionary defines it as defined by the employer. So the employer in the case of your associate, Your Honor, does not cut the associate's pay because it'll be great if the employer had defined something here but if you can't tell us what the employer is defined you're just making it up. Your Honor, we're not making it up. Respectfully, we're relying on the dictionary definitions which make it clear to us and hoping to convince you of this that fewer than the number of standard of hours standard number of hours is part-time but the standard number of hours for that occupation and for that employer is what the occupation and the employer require. Counsel, let's suppose I don't want to drag my colleagues off task here but let's suppose I'm not persuaded immediately by what you've said. I'd appreciate if you'd go to the facts and at some point in your argument I would appreciate you addressing whether Dr. Conner is collaterally stopped by virtue of the filings that she made in the other but I didn't see any argument that there was collateral estoppel. Do you have a side suit against Dr. O'Connor for claiming that she was disabled in the other policy that you hold? No, Your Honor. Well, it seems that her first policy was, I don't know, Revere and then this policy is, do you say it Unum or Unum? How do you say it? Unum, Your Honor. Unum. But now Unum bought Revere and so the side story looks like Unum's kind of irritated that they're having to pay under two different policies. I'm sorry, Your Honor. I didn't know that here was a question. So, yes, Unum. Well, that kind of looks like you're, you know, if you can't give us a number and then, you know, we all, you know, what's really going on here? And you can't give us a number but it seems like that there's an irritation on Unum's part that they've already paid under Revere and now they bought up Revere and now there are two policies. That's basically undisputed and, you know, we've got to interpret it. Well, I understand, Your Honor, and, you know, as far as your irritation point, you know, I don't know if these people get irritated by claims but I think they do. I think they do and they think on some level but that still doesn't mean and everyone sort of knows that as a back story but we still have to look if she's entitled to coverage under this one then she gets it regardless of whether she got it under another one. Well, that's true but they're still paying the other one so it's not like they terminated the claim under the other one. But, I mean, this whole issue of whether or not her claims with respect to this policy were factually inconsistent with the claims she made in prior years under the Revere policy. This was all hashed out in front of the district court and an attack on her credibility and then the district court made a judgment as to how to weigh that and our review is just for clear error on that point. Is that right? Well, on that to that limited question, the answer is yes but in a de novo review when the court has the opportunity to review the record as a whole it must also consider. Why would we get to de novo review in assessing that question of Dr. Connor's credibility? Your honor, as part of the de novo review the court should look at all the facts in the record and determine which is more credible. Where does the de novo review come from? I thought you conceded in your opening brief that the standard of review was clear error on that. Clear error on the second issue, your honor. The first issue as to whether or not the full-time employee requirement was disregarded is subject to de novo. I just heard you say two seconds ago that de novo review on credibility and that part of the court's right. I mean we don't do that. I'm asking the court not to make a specific finding on credibility, your honor. I'm asking instead for the court to look at the record as a whole following its de novo review and determine that the plaintiff, Dr. Connor, did not sustain her burden approving entitlement to coverage. But if we break it down as you did and we start with the interpretation question, assume we disagree and we think the 30-hour standard is what applies to full-time, then it's a factual question whether she was working 30 hours in the period right before that's relevant. That was hotly disputed in front of the district court and she made a judgment as to how she resolved that and we don't get to review that de novo. Your honor, with respect to the second issue which I raised, which is the district court's finding on that issue, whether or not she was in active employment, that's subject to a different standard of review, the clearly erroneous standard of review. So in that respect, I would agree with your honor. But where we part company I think is on the first issue, which is the full-time employment definition. So you concede that if we don't agree with you on the full-time employment, you lose because there isn't clear error? Am I hearing that? No, your honor. I'm saying that if we lose on the de novo review, then the court goes to the second claim of error, which is that the district court's finding on the active employment issue was clear error. Why don't you tell us what was clear error? So briefly, your honor, I'd like to save some time for rebuttal, but I do want to answer your question. So her own statements, I think, are the strongest evidence. She consistently told Paul Revere that she was working part-time because her health prevented her from working more. Her doctor said she couldn't work more. That's how she collected. She gave an explanation for that and I understand you don't think much of that explanation. But the district court weighed that and accepted the explanation. And why? I don't see what says that that was unreasonable. I mean, you could, this was one that you could have resolved either way, but the district court resolved it against you. Respectfully, your honor, the declaration that Dr. Conner signed after she filed her total disability claim in June of 2019 said she was working at least 30 hours from the time she started there in July of 2017. That directly contradicts her statements to Paul Revere during that same period of time for which there's been no explanation. So you can't say there was, you can't, that's hyperbole. You can't say there was no explanation because she was confronted in the district court with that inconsistency and she gave an explanation. I recognize that you don't agree with the explanation, but to say there was no explanation seems to me to be hyperbole. Your honor, I didn't mean to be hyperbolic about the issue, but what I meant to emphasize was that the statements in the declaration, which the district court used as the basis for its decision, were not supported by either plaintiff's prior comments at a time she had no reason to state that she was working more hours than she did, or the other evidence in the file, including the fact that the employer hired her for part-time, paid her for part-time, contracted her for part-time, she never renegotiated her contract. That universe of facts supports our position in this case, your honor. Okay, unless my colleagues have additional questions, I'll allow you to reserve the balance of the time. You have a minute and a half, but I'll give you two minutes for rebuttal. We don't appear to have additional questions. All right, so we'll go to, I believe it's, is it Scott Calvert? Yes, your honor. All right, please state your appearance. May it please the court, Scott Calvert on behalf of Appley, Dr. Carolyn O'Connor. Dr. Conner submits that the district court's interpretation of the policy was the correct one, that Unum is arguing that, Unum in this case is trying to impose a different standard on Dr. Conner, one that is not included in the policy, the policy, excuse me, the plan. The plan says nothing about requiring 40 hours a week to be full-time. The most obvious reading of the plan is that in order to be considered an active employee, full-time active employee, you need to work at least 30 hours a week. Well, so then how do we reconcile Dr. Conner's representations to Paul Revere that she worked 20 to 25 hours a week with her present claim that she worked more than 30 hours a week? So the most recent representation to Paul Revere regarding the slightly lower numbers per week was in July 2018, which is six months before her claim of disability. Well, but he points out that part of what she claimed extended back to 2017, and what was the explanation for that inconsistency? So there are two things, your honor. One, that dispute is not necessarily relevant to this case. That is, would be a dispute with Paul Revere. If Paul Revere has a concern about that Dr. Conner was making misrepresentations. Well, but we have to make a clear error review of whether or not, you know, you could correctly resolve this this way. And if there's a flagrant inconsistency in what she said, that would bear on that. So why is there not? Well, I don't The last representation to Unum was made in July 2018. She was disabled in December 2018. As part of her disability, this is part of her declaration and other statements that she made to Unum, is that part of the reason she had to go on full-time disability, as opposed to just residual, was that over the last six months from July 2018 to December 2018, she was working more and more So she had her hours had increased over time. Time after her last representation, her last claim form was filed with Paul Revere. And during that time, she was working more than 30 hours a week. She was working 30, 40, you know, all the way up to 50, considering and more when her on-call hours are factored in. So there is no inconsistency. She has not made inconsistent statements to either The Paul Revere representations were July 2018 and prior. The claims to Unum were the statements were the last six months, which is July 2018 to December 2018. And again, to the, you know, collateral estoppel issue raised during Mr. McGuire's questioning, again, if Paul Revere has an issue with those representations, that's a Paul Revere issue, but this is a Unum issue. Unum has not raised that issue. And in fact, Unum direct your attention to that particular comment he referenced that she said that she was working a minimum of 30 hours per week, but usually more since July 2017. Did she say that? And if so, what is the explanation for that? Because that does seem inconsistent. Well, again, even if that is inconsistent, Your Honor, that's a Paul Revere issue. That is not a Unum issue. No, it may be an issue for Paul, but it's an issue for us because if it's flagrantly contradictory and the district court blew by this, maybe that's clear error. Well, there's two things, Your Honor. One, that she, the representations on the claim form for earlier, there's a, Dr. Holst was considered that the patient-facing hours. So that's when she was talking about seeing patients, but the additional hours that were included in her contract were more than just patient-facing hours. Those were also administrative task hours. Those were the on-call hours. Those were different hours. And it was the ramping up over time that was problematic. And that's what caused her to have to go on full-time disability because her hours were increasing and increasing and increasing. And so it's the most, it's the last six months. And once the on-call hours over time, accumulative time, that's when she was working. This is not clear error because the judge looked at all of these things and consider all of these things and determined that Dr. Connor had 30 hours a week. So are the on-call hours considered hours worked even if Dr. Connor was not actually called? And if the on-call hours are not counted as hours worked, did Dr. Connor still work more than 30 hours a week? So I'll take the second part of the question first. Yes. Even if on-call hours are not included, based on her declaration and her representations that she submitted to the court, to the district court and to UNUM during the claim review process, she averaged around 32 hours a week. A couple of times it was lower than 30, it was 29, 28 and a half. And other times it was more than 30, 32 and a half. But over time, she averaged more than 30. The on-call hours should count because she had to work. She had to be by the phone. She had to answer calls. It's not like she never worked during the on-call hours. And additionally, in addition to taking, so on Saturdays, your on-call hours require you to go into the clinic. So her Saturday on-call hours require her to be on site. Her weekday on-call hours, she had to be available by telephone. And during those times, she wasn't maybe not necessarily taking calls for the full five, six, eight hours, but she was available to work. She was required by her employer to be available to work. She did take calls during that time. And I believe she would use that time to fill out paperwork and that sort of thing. So to answer your first, to get back to your first question, there's no indication as to why on-call hours would not be part of her, part of the hourly requirement. She had to work those hours. Those hours were part of her requirement. If you, as cited in the briefing, the employment contract required and mentioned that she needed to work on-call hours. So there's no reason for on-call hours to be separate from her regular hours. And the plan does not delineate between working hours in the office and administrative and that sort of thing and on-call hours. Unum drafted this plan with the help of her employer. If they wanted to exclude on-call hours from the hours requirement, they had every opportunity to do so. The fact that they didn't do so does not allow them now to come back and rewrite the plan and rewrite on-call hours out the hours worked. It does not allow Unum to get back to the, I think the main argument that Unum is making is that it has the right to rewrite the plan to require 40 hours a week or 20 hours a week in Mr. McGuire's documentation if the person is a yoga instructor. In the final briefing, Unum makes a big point that they're the largest disability insurance company. And so they can't be expected to, you know, write every single policy. But Unum has more than one policy. It's not a one-size-fit-all policy that goes to a doctor or a lawyer or accountant or a yoga instructor or a teacher, you know, to use some of the examples that Mr. McGuire used. Unum worked on this policy with the employer. There are a million, there are a million, there are many different, um, hyperbole. That's what you're, what counsel for the appellant got cited for, hyperbole. Yes, which is why, which is why I checked myself. There are hundreds of different options that can be available. Less is more in appellate arguing. Okay, that's, uh, I'm going to do an MCLA this afternoon and less is more hyperbole is bad. Thank you, your honor. Um, I will still stand by my statement that there are hundreds of different options that could go through in any plan document. There are exclusions, there are, um, you know, pre-existing exclusions, there are limitations for the kinds of disability. Unum controlled the plan. Unum wrote this plan. If Unum wanted to define full-time as being 40 hours a week, it could have done so. It, it made the affirmative decision not to do so. But then when Dr. Conner made her claim, it argued that, well, she has to work 40 hours a week to qualify for benefits because Black's Law Dictionary says, or Unum, or, um, Miriam Webster's, you know, definition of part-time says this, and, um, there is... Well, let's, let's talk about what weight should we give to Dr. Conner's employment agreement, which reflects a status of part-time employee working 12 to 15 hours a week? Well, your honor, I would say that it is important to note that even the one statement that Unum is relying on regarding Dr. Conner's hours being less than 30 said she worked 19 hours a week. So even the employer said she worked more than that. I think that is patient-facing time. She was in the office around that period of time, and actually quite more. But I think that goes along with the thing that was mentioned earlier is that, you know, each employer requires different things. That said, the employment agreement did say 12 to 15, but the, that's the letter, not the agreement, um, not the employment contract. The employment contract listed a, you know, dozen, a bevy of duties that she was required to, to meet, and it took more than 12 and 15 hours. Even her employer stated one time she was working 19 hours. Now, two other times it said 30 hours. Did the district court hear that evidence? Yes, your honor. The evidence that she worked more than 19... No, that, that the part-time employee working 12 to 15 hours. Did the district court hear that as part of the entire hearing determining whether she was part-time, full-time, whatever? Yes, your honor. That letter is part of the administrative record and was central in Unum's argument that she was a part-time employee. But, you know, the plan, the important part of the plan is that it does not delineate between, it does not define part-time or full-time. It doesn't say your employer has to classify you as full-time. It just talks about the 30 hours. I think what, you're, you're not reading my tea leaves from this standpoint. I'm asking you if the information that, while that does seem inconsistent with, uh, uh, being, uh, a full-time employee, was that thrown in the mix of factors that were considered before an ultimate decision was made. So is that part of whether there's clear air, whether there was a factual finding? I mean, obviously if that was left out, that might be significant, but I'm asking you, was that part of the full mix? It was part of the mix, your honor. It was part of the administrative record that was submitted to the court and that the court reviewed. It was also made central to Unum's argument. So the court did review that document and incorporate that in its decision that, um, Dr. Conner was working more than 30 hours a week and was required to work more than 30 hours a week, especially once the on-call is factored in. So yes, that was considered at the district court level and baked into the cake as it were. Was, was, was Dr. Conner, uh, when she was on call, uh, does that mean that she would have to take phone calls or does that mean that she would have to go into the, into the office or into the a house call? What, what did that mean? So it was different for weekday versus weekend. On the weekends, the on-call required that Dr. Conner go to the office so that if a patient came into the office, a physician was there to treat that, that patient. And if for the week, for the weekday on call hours, she had to be by the phone to answer questions in emergency or something. Okay. And did she record the time? So if she, if she got a call during that time, I understand she's on call, so she has to be by the phone that limits some of her activities. Um, if she gets a call, did she record that any place? Was it, was this recorded and compensated in some other way? Well, I don't believe so because she was not separate. She was not compensated separately for her on-call hours. Her on-call hours were part of her job requirements. So she was required to go in on a Saturday. She, she wasn't billing someplace that said, look, I spent another two hours, you know, getting into the office on Saturday to actually see somebody on this Saturday. Although I was on call the following Saturday and didn't see anybody at all. That's correct. Your honor for the weekend, she was physically in the office. So she would be there from whatever hours were required eight to two, eight to three, eight to five, something like that. But there was, she was not paid extra for her on-call work. So there was no need to log that requirement because that was part of her job duties. That was part of her job there to get her. That was part of the hour she had to work. So there was not a that was just part of all of the hours she was required to work as, as a physician at this. Do we know whether Dr. Connors on-call responsibilities differed from any other doctor who clearly was in the office for 40 hours a week? No, there is, there's does not. If there's no evidence that her on-call duties and requirements responsibilities were different from any other doctor on the weekend, she had to go in and on the weekday, she had to take calls just the same as any other doctors. She worked part-time because she could only work part-time due to her disability. She wanted to continue working on a limited basis to the extent that she could. And so she worked until she couldn't work any longer. And they knew that when they hired her, that she would not be working full-time as some of the other positions were, you know, as you know, as Mr. McGuire said earlier, each job has different hour requirements. And for a part-time doctor that ended up being 40 hours a week, whereas the full-time doctors, you know, obviously must've worked more. Well, it seems like her attractiveness, well, her unattractiveness is she has these migraines and, you know, you know, when you hire someone like that, that they're not probably going to be as reliable as someone that's totally healthy, but her attractiveness is they got to pay her quite a bit less, even though she was, the district court found she was working quite a bit more. Yes, Your Honor, that was part of her employment agreement. And, you know, that was obviously something that she was comfortable with as well, because she wanted to continue working as a doctor and this clinic provided her the opportunity to do so. Can I ask a quick question about the attorney's fees? I just want to make sure I understand the record. Am I right that the only evidence on the issue of rates consisted of prior orders from other cases and a general statement that the rates were reasonable for the subject in the area? I didn't see, for example, any surveys of what rates were by lawyers for particular subjects in particular geographic areas. Am I reading the record correctly? Your Honor, I believe you've missed two declarations that were submitted in support of the hourly rates. So there was the evidence that you did note, the previous orders that counsel has gotten from other cases. And we also cited two cases where other ARISTA attorneys, you know, earned up to $900 an hour three years prior with similar experience. But there was a third piece of evidence. There were two declarations submitted on behalf of Dr. Conner, one from an attorney, Glenn Cantor, and another attorney, Robert McKinnon, who are experienced ARISTA attorneys talking about how much they charge for doing the same work. And it is they charge the same amount, if not more now, and they had raised their rates earlier in time. Well, but I thought that they just talked about what they charge like for providing advice. You know, they said that they generally we can't use contingencies for this sort of work, but what we're doing like planning, then we'll do advice and that's the rate. But then they didn't sort of say, well, you know, sometimes when there's difficulty estimating, you'll see that they'll say for this community, this is what litigators, this is what the market bears for litigators. I didn't see that kind of evidence here. Those attorneys practice in throughout California, as does our office, this office was this case is in the Northern District. And those attorneys also practice in the Northern District. And that's what they charge for ARISTA cases. There were also submissions of other court cases saying this is the rate approved in the declarations and our own court orders that we've obtained and then court orders from other cases, that the rates are consistent with the market. And that's the requirement. Unum just asked for a blanket reduction, but doesn't offer any support for why we should get the lower attorney's fees rates. They just say, give them lower, give them less money per hour, but do not cite any justification for that. They didn't do any survey. They didn't provide any declarations. They didn't provide any court cases saying that the hours that we charged, the hourly rate that we charged was excessive. All right, there don't appear to be any additional questions. So we'll go to rebuttal. Thank you, Mr. McGuire. Oh, you're muted. I apologize. Thank you, Your Honor. Before I summarize, I just wanted to touch briefly on two points raised by the panel in Mr. Calvert's argument. First, as it relates to whether the district court considered the employment contract in making its final ruling. And the answer to that question can be found on page six of the lower court's decision, which is S.E.R. 151, where the court says that the employment contract was hearsay when offered to prove the truth of the case. So in our view, because hearsay is admissible in an ERISA case, that was an error. Second, before I summarize, there was a point about her clinical work versus her on-call hours. So she told Paul Revere that she worked eight to one or two clinical, three days a week. So that gives her about 15 to 18 hours. Her employer said that they give them two hours administration for every eight hours of clinical. So the clinical work doesn't get her there. She needs the on-call hours to get to 30. And Mr. Calvert says that the plan does not distinguish that, but it does because the definition of active employment says you must be working, but not available to work, be working. So in summary, Your Honor, thank you for your attention today. It's our position that the district court erred by removing the full-time employment requirement from the policy that under the de novo review, the court should review the record and find Dr. Conner did not sustain her burden of proving she was a full-time employee. And as a result, the court should reverse with instructions to enter judgment in favor of Unum. Alternatively, the court should find that the district court's finding that Dr. Conner was in active employment was clearly erroneous. Based on the evidence as a whole, it's clear that a mistake was committed. And finally, if the court finds Unum's favor on either of those things, plaintiff would not be the prevailing party and the fee claim should be vacated. The rest of the fee claim argument, we will submit on the briefs. All right. Thank you both for your arguments in this matter. It will be submitted.
judges: BYBEE, CALLAHAN, COLLINS